UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY HELM and
LINDA HELM,

      Plaintiffs,                       No. 15-12394

v.                                    District Judge Matthew F. Leitman
                                        Magistrate Judge R. Steven Whalen

FREEDOM MORTGAGE
CORPORATION and
LOANCARE, LLC,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

      This is a mortgage foreclosure case. Following a foreclosure by advertisement and Sheriff's sale under Michigan law, Plaintiffs Rodney Helm and Lindy Helm filed their complaint in the Lapeer County Circuit Court. Defendants Freedom Mortgage Corporation ("Freedom") and LoanCare, LLC ("LoanCare") removed the case to this Court on July 2, 2015. Following a telephonic status conference, Plaintiffs filed an amended complaint on January 20, 2016 [Doc. #14].

      Before the Court is Defendants' Motion to Dismiss [Doc. #15], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED IN PART AND DENIED IN PART. Specifically, the motion should be DENIED as to Plaintiffs' claim for monetary damages based on Defendant LoanCare's failure to respond to a Qualified Written Request under 12 U.S.C. § 2605. In all other respects and as to all other claims, the motion should be GRANTED.

I. **FACTS**

Plaintiff Rodney Helm purchased a house in Lapeer County, Michigan on August 17, 2012. *Amended Complaint* ¶ 13. Plaintiff Lindy Helm is his wife. *Id*. ¶ 14.[1] On August 17, 2012, Mr. Helm borrowed from and signed a promissory note to Mortgage One, Inc. The loan was secured by a mortgage given to Mortgage Electronic Registration Systems ("MERS"), as nominee for Mortgage One, Inc. *Id*. ¶¶ 15-16; Plaintiffs' Exhibit 2, attached to the amended complaint.[2] On July 24, 2014, the mortgage was assigned to Freedom, and was serviced by LoanCare. *Id*. ¶¶ 17-18; Exhibit 3.

The Plaintiffs allege that at some point before August of 2014, they fell behind in their mortgage payments and began inquiring about loan modification options. *Id*. ¶¶ 21-22. In an August 20, 2014 letter, LoanCare acknowledged that it had received Rodney's loan modification package. *Id*. ¶ 24; Exhibit 5. Plaintiffs hired attorney Steven Ruza to assist them with the loan modification process. *Id*. ¶ 24. They state that attorney Ruza led them to believe that he was in contact with the Defendants and was working on their loan modification. *Id*. ¶ 25. They were unaware the Defendants began foreclosure proceedings on or about August 3, 2014, and did not know that the property was sold at a Sheriff's sale. *Id*. ¶¶ 26-28. They state, "Due to attorney Ruza's misrepresentations, Plaintiffs were unaware that their home had gone to foreclosure sale and that the redemption period

---

[1] Plaintiffs do not allege, nor do their exhibits indicate, that Lindy Helm was a party to the subject loan or mortgage.

[2] Both Plaintiffs and Defendants have submitted written instruments and State Court documents, including the mortgage, assignment, and Sheriff's Deed as exhibits. Because those documents are central to the Plaintiff's claims as set forth in the complaint, the Court may consider them, along with matters of public record, in determining a motion under Rule 12(b)(6). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

had begun to run." *Id*. ¶ 29.  The redemption period ended on April 2, 2015.  *Id*. ¶ 113; Exhibit 4.  On May 6, 2015 (after the redemption period had expired), Defendant Freedom (the purchaser at the Sheriff's sale), filed an action for possession of the property in State District Court.  *Id*. ¶ 31; Exhibit 7. A default judgment was entered against Rodney Helm, and a consent judgment against Lindy Helm.  *Id*. ¶¶ 45-46; Exhibit 14.  Plaintiffs state that "[c]ontrary to attorney Ruza's assurances, upon information and belief, attorney Ruza had done nothing on Plaintiffs' file until May 22, 2015 when he filed a Complaint in the Lapeer County Circuit Court." *Id.* ¶ 33.  Ruza was eventually charged and sentenced criminally.  *Id*. ¶¶ 35-37.

Plaintiffs allege that the Defendants failed to send them a notice of the Sheriff's sale, that they had no actual notice of the sale prior to the sale, and that if they had been given notice, they would have been in a better position to protect their interests in the property.  *Id*. ¶¶ 105-110.  They allege that Defendants promised them a permanent loan modification "in exchange for various payments of money, and other actions to be undertaken by Plaintiffs," *Id*. ¶ 117, and that they detrimentally relied on the Defendants' promise.  *Id*. ¶ 118.

Plaintiffs allege the following counts in their complaint: wrongful foreclosure (Count I); fraudulent misrepresentation (Count II); slander of title (Count III); declaratory relief/ foreclosure barred by unclean hands (Count IV); request for conversion to judicial foreclosure (Count V).  Within Count I, Plaintiffs make the following sub-claims: (a) unlawful commencement of foreclosure proceedings while loan modification was under consideration; (b) failure to publish notice of foreclosure sale; (c) violation of "Regulation X," 12 C.F.R. § 1024.41 *et seq*; (d) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*; (e) violation of 12 U.S.C. § 2605 *et seq* by not giving

Plaintiffs written notice of the assignment of the mortgage, and by not responding to a qualified written request for information relating to the servicing of the loan.

Defendants have submitted as Exhibit 6 to their Motion to Dismiss the following documents: (1) affidavit and notices of publication, showing that notices of the foreclosure sale were published for four consecutive weeks in *The County Press* on August 3, August 10, August 17, and August 24, 2014; (2) Affidavit of Posting showing that on August 5, 2014, a notice of foreclosure sale was posted on the property; (3) Sheriff's Deed indicating that notice of the sale was published and that "a copy thereof was duly posted in a conspicuous place upon the premises;" and (4) the recorded Affidavit of Purchaser indicating the last date for redemption of the property as April 2, 2015.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief.  *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court,  construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III. DISCUSSION

#### A. Plaintiffs' Request to Void the Foreclosure

In all five counts of their Amended Complaint, the Plaintiffs ask the Court to declare the foreclosure proceedings "null and void." However, because the redemption period has expired, and because the Plaintiffs have not plausibly pled either fraud in the foreclosure proceedings or prejudice, all five counts are subject to dismissal.

Following the Sheriff's Sale, the Plaintiffs failed to redeem the property within the six-month statutory redemption period, and therefore do not have standing to contest the foreclosure. In Michigan, the failure to redeem the property within the six-month period

following a foreclosure by advertisement divests the former owner of all rights to the property. *Piotrowski v. State Land Office Bd.,* 302 Mich. 179, 4 N.W.2d 514 (1942)(because "[p]laintiffs did not avail themselves of their right of redemption in the foreclosure proceedings," all "rights in and to the property were extinguished" at the end of the foreclosure period). *Id*. at 187; M.C.L. § 600.3236[3]; *Conlin v. MERS*, 714 F.3d 355, 359 (6th Cir. 2013)(citing *Piotrowski*).

In exception to the general rule, "Michigan courts allow 'an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice' in order to keep a plaintiff's suit viable, provided he makes 'a clear showing of fraud, or irregularity' by the defendant.'" *El-Seblani v. IndyMac Mortg. Services,* 2013 WL 69226, *3 (6th Cir. January 7, 2013)(citing *Schulthies v. Barron,* 16 Mich.App. 246, 167 N.W.2d 784, 785 (1969)); *Conlin* at 359. "The standards for obtaining such an extension are stringent." *Id*. In *Conlin, supra* the Sixth Circuit, citing *El-Seblani*, stated:

> "Whether the failure to make this showing [of fraud or irregularity] is best classified as standing issue or as a merits determination, one thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period."

The fraud must relate to the foreclosure proceeding itself. *Conlin, supra*.

---

[3]M.C.L. § 600.3236 provides that with respect to a deed issued after foreclosure by advertisement:

Unless the premises described in such deed shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter....

Plaintiffs have not stated a plausible claim of fraud.  A claim of fraud must allege the following: "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Hi-Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976).  "The absence of any one" of these elements "is fatal to a recovery." *Id.* (Internal citations omitted).  Further, a claim of fraud "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). The claimant must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993).  "The Rule's purpose is to alert defendants 'as to the particulars of their alleged misconduct' so that they may respond." *Kanouno v. SunTrust Mortg., Inc.,* 2011 WL 5984023, *4 (E.D.Mich.2011)(Rosen, J.)(citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir.2007)).

The Plaintiffs' allegations of fraud fall short of what is required to state a plausible claim.  First, the claimed misrepresentations were made by their attorney, Steven Ruza, rather than the Defendants.  *See Amended Complaint*, ¶ 25 (Plaintiffs "led to believe by attorney Ruza" that he was working on a loan modification with Defendants); ¶ 29 ("Due to attorney Ruza's misrepresentations, Plaintiffs were unaware that their home had gone to foreclosure sale and that the redemption period had begun to run"); ¶ 33 ("Contrary to attorney Ruza's assurances...Ruza had done nothing on Plaintiffs' file until May 22, 2015 when he filed a Complaint in the Lapeer County Circuit Court"); ¶ 38 ("As a result of

attorney Ruza's deceptive and fraudulent practices, Plaintiffs were left with no idea of the status of their file with Ruza and if anything had been done with their loan modification application.").

Moreover, the allegations of fraud by Defendants lack the specificity required by Rule 9(b). They claim in general terms that "Defendants promised a permanent loan modification to Plaintiffs," *Amended Complaint*, ¶ 117, that Plaintiffs "detrimentally relied on Defendants' promises," ¶ 118, and that Defendants "never permanently modified Plaintiffs' loan, as explicitly promised." ¶ 119. Plaintiffs allege that "Defendants made representations to Plaintiffs, including but not limited to, that they would not begin foreclosure proceedings while the parties were actively pursuing loan modification or other financial assistance options." *Id*. ¶ 166. Which Defendant made these representations? Who was the person who made these promises, and when and where did he/she make them? Were they made in writing?[4] Orally? These omissions are "fatal to recovery," *Hi-Way Motor Co., supra*, and vague and generalized allegations such as these satisfy neither Rule 9(b) nor the plausibility standard of *Iqbal*.

I also note that the Plaintiffs' suggestion that they pursued continuing loan modification negotiations with Defendants is contradicted by their claim that they were under the impression that attorney Ruza was pursuing negotiations, and that "contrary to" his assurances, they later learned that he "had done nothing on Plaintiffs' file until May 22, 2015...."

---

[4] Plaintiffs have not submitted any writing promising a loan modification. Absent a written and executed contract, any agreement to modify the loan would be unenforceable under the Statute of Frauds.

The Plaintiffs might have a fraud claim against attorney Ruza. They have not stated one against the present Defendants.

Furthermore, the Plaintiffs have not shown that they would have been prejudiced in the foreclosure sale by any alleged fraud. In *Kim v. JP Morgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329 (2012), the Court held that to even show that a foreclosure is *void*, "plaintiffs must show that they were prejudiced by defendant's failure to comply with [M.C.L.] 600.3204. To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." In *Conlin*, 714 F.3d at 362, the Court noted as follows regarding the requirement of prejudice:

> "Even were the assignment from MERS to U.S. Bank invalid, thereby creating a defect in the foreclosure process under § 600.3204(1)(d), Plaintiff has not shown that he was prejudiced. He has not shown that he will be subject to liability from anyone other than U.S. Bank; he has not shown that he would have been in any better position to keep the property absent the defect; and he has not shown that he has been prejudiced in any other way."

Here, the Plaintiffs admit that they defaulted on their promissory note. They suggest that *if* they had been granted a loan modification, they would have been able to make payments on their house. But they had no right to a modification, nor was any modification granted. *Conlin* requires a showing of actual, not hypothetical prejudice, and Plaintiffs have not plausibly alleged that they would be in a better position to keep their property notwithstanding any generalized claim of fraud in the foreclosure proceeding.

Therefore, all claims seeking to set aside the foreclosure must be dismissed.[5]

### B.  TILA and RESPA

Plaintiffs allege violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641 (g), and the Real Estate Settlement Procedures Act ("RESPA"), specifically "Regulation X," 12 CFR § 1024.41.  As the remedy of setting aside a foreclosure sale is not available under these provisions, *see Servantes v. Caliber Home Loans, Inc.*, 2014 WL 6986414 (E.D. Mich. 2014), Plaintiffs seek monetary damages.

Plaintiffs claims center on three allegations: first, that they did not receive notice that their loan was sold or transferred; second, that the Defendants went forward with foreclosure proceedings while loan modification negotiations were ongoing; and third, that the Defendants did not respond to a Qualified Written Request for information on their loan.

Plaintiffs have provided scant factual support for their claim that they did not receive notice that their loan was assigned. Presumably they are referring to an assignment to Defendant LoanCare on July 1, 2014.  But Exhibit 3 to Defendants' motion (Notice of Loan Transfer) belies that claim.[6] In addition, as noted above, any failure of loss mitigation review or loan modification discussions are, by Plaintiffs own

---

[5] This includes Count II (fraudulent misrepresentation), Count III (slander of title), Count IV (foreclosure by unclean hands), and Count V (request for conversion to judicial foreclosure).  In addition, Count IV, which appears to allege a breach of an implied covenant of fair dealing must be dismissed for failure to state a claim on independent grounds. Specifically, "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."  *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich.App. 463, 476, 666 N.W.2d 271 (2003) citing *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich.App. 194, 197, 480 N.W.2d 910 (1991).

[6] "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim. " *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)

admission, attributable to their former attorney, not to these Defendants.[7]

However, Plaintiffs' claim that they did not receive a response to their Qualified Written Request, *Amended Complaint*, ¶¶ 161-164, stands of firmer ground. 12 U.S.C. § 2605(e)(2) provides that a servicer must respond to such request within 30 days. Plaintiffs have submitted as Exhibit 18 to their complaint correspondence from LoanCare (dated June 19, 2015) and LoanCare's counsel (dated June 29, 2015), acknowledging receipt of a Qualified Written Request, and promising a formal response "in accordance with the applicable law." Defendants have submitted as Exhibit 17 of their motion the Qualified Written Request, dated June 15, 2015, that Plaintiffs' attorney sent to LoanCare. However, Defendants have not submitted a response–timely or otherwise–to the Plaintiffs' request, and have not addressed this claim in either their motion or their reply brief. Under § 2605(f), a defendant's failure to respond to a Qualified Written Request can result in an award of statutory damages of up to $2,000.00 and/or actual damages.

It appears that Plaintiffs have pled a proper claim under 12 U.S.C. § 2605. Defendants' motion to dismiss this claim should be denied.[8]

---

[7] Regulation X provides that "[s]ervicers cannot foreclose on a property if the borrower and servicer have come to a loss mitigation agreement, unless the borrower fails to perform under that agreement." Here, the parties never entered into a loss mitigation agreement.

[8] Contrary to Defendants' argument, this claim is not subject to dismissal under the Rooker-Feldman doctrine. Rooker–Feldman is based on the principle that a federal district court does not have appellate jurisdiction to review a state court judgment; that power is reserved to the Supreme Court under 28 U.S.C. § 1257. Currently, "[t]he Rooker–Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). First, Plaintiffs did not file their complaint in federal court, and did not ask this Court to reverse a state court judgment. It was the Defendants who removed the case to this Court. Second, the RESPA claim for money damages regarding Defendants' alleged

### IV. CONCLUSION

For these reasons, I recommend that Defendants' Motion to Dismiss [Doc. #15] be GRANTED IN PART AND DENIED IN PART, as follows:

The motion to dismiss the claim for monetary damages under 12 U.S.C. § 2605 as to Defendant LoanCare should be DENIED.

In all other respects and as to all other claims, the motion to dismiss should be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

failure to respond to a Qualified Written Request was not a part of the foreclosure proceeding or the summary eviction judgment. Thus, this claim does not involve an injury arising out of a state court judgment.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                                s/ R. Steven Whalen
                                                R. STEVEN WHALEN
                                                UNITED STATES MAGISTRATE JUDGE

Dated:  September 7, 2016


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 7, 2016, electronically and/or by U.S. mail.

                                                s/Carolyn M. Ciesla
                                                Case Manager to the
                                                Honorable R. Steven Whalen